IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRANS/AIR MANUFACTURING CORPORATION, | * | |
| Plaintiff | * | |
| | | Civil No. L-07-02517 |
| vs. | * | |
| CHARLES MERSON | * | |
| and | ****** | |
| CARRIER CORPORATION, Defendants | | |

**MEMORANDUM**

Plaintiff Trans/Air Manufacturing Corporation ("Trans/Air") filed this action against defendants Charles Merson ("Merson") and Carrier Corporation ("Carrier") in the Circuit Court for Baltimore County on September 18, 2007. The case was removed to this Court on September 20, 2007 on grounds of diversity of citizenship. Now pending is Trans/Air's motion to remand. For the reasons that follow, the Court will, by separate order, GRANT Trans/Air's motion and REMAND this action to the Circuit Court for Baltimore County.

**I.    Background**

Trans/Air is a Maryland corporation engaged in the business of manufacturing, selling, and servicing school and commercial bus air conditioners. From February 1995 until March 2007, Merson was employed by Trans/Air as a technical services engineer. In October 1999, Trans/Air and Merson executed a "Business Non-Disturbance Agreement" as a continued condition of Merson's employment.

Stripped to its essentials, the agreement provides that Merson will maintain the secrecy of Trans/Air's confidential information and will refrain from competing with Trans/Air or soliciting its customers for a period of 24 months following the termination of his employment.

Citing a reduction in its work force, Trans/Air terminated Merson on March 30, 2007. On June 11, 2007, Merson obtained a position with Carrier, a Maryland corporation engaged in the sale and servicing of air conditioning and other ventilation systems. Merson is currently employed by Carrier as a field service engineer.

On September 18, 2007, Trans/Air filed a complaint against Merson and Carrier in the Circuit Court for Baltimore County, alleging that Merson had violated the Non-Disturbance Agreement by accepting a position with Carrier. To prevent further violation of its rights, Trans/Air sought preliminary and permanent injunctive relief, as well as a temporary restraining order prohibiting Merson and Carrier from continuing to violate the terms of the Non-Disturbance Agreement.

Merson and Carrier filed a notice of removal with this Court on September 20, 2007, asserting diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[1] The removal notice states that Trans/Air is a citizen of Maryland, Merson a citizen of Pennsylvania, and Carrier a citizen of both Delaware and Connecticut.[2] Accordingly, the notice declares that complete diversity exists between the parties[3] and

---

[1] § 1332(a)(1) provides that federal district courts have original jurisdiction of all actions between citizens of different states when the amount in controversy exceeds $75,000.

[2] 28 U.S.C. 1332(c)(1) provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

[3] In order for jurisdiction to be proper under 28 U.S.C. § 1332, the parties must be completely diverse: "none of the plaintiffs may share citizenship with any of the defendants." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999).

that removal is proper pursuant to 28 U.S.C. § 1441.

On September 21, 2007, the Court held a telephonic hearing on Trans/Air's motion for a temporary restraining order. The Court denied the motion, but directed Merson and Carrier to file a letter representing, *inter alia*, that Merson would refrain from violating the confidentiality and non-compete clauses of the Non-Disturbance Agreement during the pendency of this litigation. During a second teleconference on October 3, the Court scheduled a preliminary injunction hearing for December 20, 2007.

Trans/Air filed the present motion to remand on October 16, 2007. The motion asserts that Trans/Air is a Maryland corporation with its principal place of business in Dallastown, Pennsylvania, and consequently a citizen of both states for purposes of the diversity statute. Because Merson is also a citizen of Pennsylvania, Trans/Air contends that complete diversity is absent and that the Court is without subject matter jurisdiction over this dispute. Accordingly, Trans/Air requests that this action be remanded to the Circuit Court for Baltimore County pursuant to 28 U.S.C. § 1447(c).[4]

On November 6, 2007, Merson and Carrier filed a motion to dismiss Trans/Air's complaint, arguing that the Court lacks personal jurisdiction over Merson and that Trans/Air has failed to state claim upon which relief may be granted. Accordingly, Merson and Carrier contend that dismissal is warranted under Rule12(b)(2) and/or 12(b)(6), respectively, of the Federal Rules of Civil Procedure.

**II.     Analysis**

The Court agrees that Trans/Air is a citizen of Pennsylvania for purposes of 28 U.S.C. § 1332.

---

[4] 1447(c) provides: "If at any time it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

We are, therefore, without subject matter jurisdiction and must remand this action to the Circuit Court for Baltimore County. Before explaining our analysis on this point, however, we must first address three procedural arguments raised by Merson and Carrier in opposition to Trans/Air's motion to remand.

### A. Defendants' Procedural Arguments

Merson and Carrier first contend that "it is noteworthy" that Trans/Air did not file its motion to remand until after the Court had denied its motion for a temporary restraining order. Def.'s Opp. to Pl's Motion, 2. Assuming that Merson and Carrier mean to argue that Trans/Air has waived its objection to removal, we disagree.

Even if Trans/Air "consented" to the jurisdiction of this Court by continuing to seek a temporary restraining order after the case was removed, the absence of federal subject matter jurisdiction is a non-waivable defect. "Because a federal court's subject matter jurisdiction is created and limited by Article III and federal statutes, no action of the parties can confer subject matter jurisdiction on a federal court, and ordinary principles of consent, waiver, and estoppel do not apply." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005)(citing Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982))(internal quotation omitted). Federal courts have an independent obligation to satisfy themselves of their own subject matter jurisdiction, id., and the timing of Trans/Air's motion has no bearing on our institutional duty to observe the limitations that the Constitution and Congress have placed on our authority.

Second, Merson and Carrier argue that the Court should defer its ruling on Trans/Air's motion to remand until after it has ruled on their motion to dismiss. We decline to take this step. Although it is true that a district court may, in certain cases, rule on a motion to dismiss for lack of personal

jurisdiction before considering a motion to remand for lack of subject matter jurisdiction,[5] this is not such a case. As explained more fully below, the alleged defect in subject-matter jurisdiction, i.e., lack of complete diversity, does not present a difficult or novel question of law. Accordingly, "both expedition and sensitivity to the state courts' coequal stature should impel the district court to dispose of [the subject-matter jurisdiction] issue first." Ruhrgas, 526 U.S. at 587-88.[6]

The defendants' final procedural argument is that the Court is "required" to permit them to conduct jurisdictional discovery before considering Trans/Air's motion to remand. Def's Opp., 6. This is a misstatement of the law. Although discovery is available to ascertain facts bearing on jurisdiction or venue, see Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978), the decision to permit such discovery is a matter committed to the sound discretion of the district court. Base Metal Trading, Ltd. v. "Novokuzenetsky Aluminum Factory," 283 F.3d 208, 216 (4th Cir. 2002). Where, as here, a party "simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction," the Court does not abuse its discretion by refusing to allow discovery. Id. Accordingly, we deny defendants' request and will consider Trans/Air's motion in light of the evidence before us.

---

[5] See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 588 (1999)("Where... a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion in turning to directly to personal jurisdiction.")

[6] Accord Lolavar v. DeSantibanes, 430 F.3d 221, 227 (4th Cir. 2005)("In considering which jurisdictional question to address, the district court is entitled to consider whether each of the jurisdictional issues, personal or subject matter, are simple and straightforward or are complex and perhaps difficult. Upon making its choice of which avenue to follow, the district court should be affirmed unless it has abused its discretion. And it is not an abuse of discretion to choose the simple and straightforward... as opposed to a complex and perhaps difficult route.")

B. Trans/Air's Principal Place of Business

1. *Standard of Review*

As a general matter, the removing party bears the burden of establishing federal jurisdiction. In determining whether diversity jurisdiction exists, § 1332 is to be strictly construed, all doubts being resolved against federal jurisdiction. Columbia Gas Trans. Corp. v. Burdette Realty Improvement, 102 F.Supp.2d 673, 675 (internal quotation omitted).

Our analysis of the present motion turns on the location of Trans/Air's principal place of business. If, as Trans/Air contends, its principal place of business is Dallastown, Pennsylvania, complete diversity is absent and we are constrained to remand this case to the Circuit Court for Baltimore County. If, on the other hand, Carrier and Merson are correct in asserting that Trans/Air's principal place of business is Baltimore, Maryland, jurisdiction is proper under 28 U.S.C. § 1332(a)(1).

The Fourth Circuit has recognized two tests for determining where a corporation has its principal place of business, the "nerve center test" and the "place of operations test." Athena Automotive, Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999). Application of the nerve center test is typically appropriate when a corporation "engages primarily in the management of geographically diverse investment assets." Id. Under these circumstances, the nerve center test fixes a corporation's principal place of business as "that place where the corporation makes [its] home office, or [the] place where the corporation's officers direct, control, and coordinate its activities." Id. (internal quotations omitted).

When a corporation "has multiple centers of manufacturing, purchasing, or sales," however, district courts are counseled to apply the "place of operations test," which focuses on "the place where

the bulk of corporate activity takes place." Id. In the case before us, Trans/Air is engaged primarily in manufacturing, selling, and servicing school and commercial bus air conditioners. It owns a manufacturing plant, purchasing centers, and sales facilities - "the normal indicia of a corporation's place of operations." Patterson v. Cooley, 142 F.3d 181, 184 (4th Cir. 1998). At the same time, there is nothing in the record to suggest that Trans/Air operates as a holding company or "passive investment vehicle." Patterson v. Cooley, 142 F.3d 181, 184 (4th Cir. 1998). Accordingly, we conclude that Trans/Air's principal place of business is properly determined under the "place of operations test,"[7] although the same result obtains under the "nerve center" test as well. We therefore consider factors relevant to the application of both tests.

2. *Discussion*

In determining a corporation's principal place of business under the "place of operations" test, relevant considerations include the location(s) of the corporation's offices, personnel and tangible assets, as well as the locus of its day-to-day operations. Peterson, 142 F.3d at 184-85; see also West v. Cracker Barrel Old Country Store, et al., CCB-06-0400 (D.Md. 2006), 6. Other factors include the location(s) where meetings are held, taxes are paid, and corporate records are kept, in addition to the location that "the corporation would consider its home." Grimm v. Plasma Processing Corp, 888 F.Supp. 56, 58 (S.D.W.Va. 1995); see also Columbia Gas, 102 F.Supp.2d at 677. Considering these factors in light of the record before us, we conclude that the place of operations test establishes

---

[7] As the Fourth Circuit explained in Patterson, "[t]he place of operations test presumes the existence of physical operations by which a corporation's presence in different states can be measured." Id.

Dallastown, Pennsylvania as Trans/Air's principal place of business.

Trans/Air's filings with the Court declare that its manufacturing plant and warehouse facilities are located in Dallastown, Pennsylvania, as are its corporate officers and approximately two-thirds of its employees. See Pl.'s Mem., Att. 1, Affidavit of Mark Slobodian ("Slobodian Affidavit"), ¶ 3-5. With the exception of certain files kept at regional sales and service offices throughout the country, almost all of the company's corporate records are kept in Dallastown. Id. Perhaps most significantly, the vast majority of Trans/Air's business activities - including manufacturing, purchasing, engineering, accounting, sales, and field service coordination - are carried out from its Dallastown location. Id. ¶ 5. Taken together, these factors strongly suggest that the bulk of Trans/Air's corporate activity takes place in Dallastown, Pennsylvania.

Notwithstanding this evidence, Carrier and Merson persist in their assertion that Trans/Air's principal place of business is Baltimore, Maryland. In support of this argument, they point to Trans/Air's Articles of Incorporation and other filings with the Maryland State Department of Assessments and Taxation (SDAT). In both its original and amended corporate charter, Trans/Air declares that "[t]he ... address of the principal office of the Corporation in this state is 7655 Pulaski Highway, Baltimore, MD 21237." Def.'s Mem., Att. 1-2. Trans/Air's taxpayer filings with the Maryland SDAT contain a similar affirmation.[8] Id., Att. 4. Relying on these filings, Carrier and Merson contend that Trans/Air is a Maryland corporation with its principal place of business in Maryland, and

---

[8] Significantly, however, the same filings state that the company's mailing address is 48 East Locust Street, Dallastown, Pennsylvania. Id. at 3. According to the company's Chief Financial Officer, Trans/Air uses its Dallastown address in "all formal tax filings with the state of Maryland." Pl.'s Reply Mem., Att. 1, Affidavit of Brian L. Auchey, ¶ 2.

that "it should be estopped from ... arguing a conflicting position for purposes of this litigation." Id. at 4.

These corporate records do not persuade us that Trans/Air's principal place of business is located in Maryland. As a Maryland corporation, Trans/Air is required by law to have both a resident agent and a "principal office in this State." Md. Code Ann., Corps. & Ass'ns. § 2-108 (emphasis supplied). There is a fundamental difference, however, between a corporation's principal office within a state and its principal place of business for purposes of 28 U.S.C. § 1332. By declaring in its corporate charter and tax filings that the company's "principal office" within the state of Maryland is located in Baltimore, Trans/Air is not, as Carrier and Merson contend, representing that its principal place of business is located in Baltimore as well. Instead, the company is merely seeking to comply with obligations under Maryland law.[9] To the extent we are charged with ascertaining Trans/Air's principal place of business, we decline to transform such compliance into an affirmation of corporate citizenship.

In short, the record establishes that the bulk of Trans/Air's corporate activity takes place at its Dallastown location. The corporate records on which Carrier and Merson rely do nothing to rebut this conclusion. Accordingly, we hold that the place of operations test fixes Trans/Air's principal place of business in Dallastown, Pennsylvania.

Even were we to determine that application of the nerve center test was appropriate in this case, our conclusion would not change. In determining a corporation's principal place of business under the nerve center test, the critical considerations are "where the activities of the corporation are

---

[9] Our conclusion on this point is bolstered by the fact that Trans/Air's "principal office" within the state of Maryland is also that of its Resident Agent, an individual named C. Richard Lehnert. See Def.'s Mem., Att. 4.

controlled and directed" and/or "where [the company's] executive headquarters are located." Peterson, 142 F.3d at 185 (internal quotations and citations omitted). According to Trans/Air's filings with the Court, all of the company's activities, even those of its five "remote facilities," are directed by corporate officers in Dallastown, Pennsylvania. Slobodian Affidavit, ¶ 4. Furthermore, the filings declare that nearly all of Trans/Air's corporate records are kept in Dallastown, and that an industry certification statement lists Dallastown as the location of the company's corporate headquarters. Id. ¶ 5-6. These filings establish that Trans/Air is managed from its Dallastown location, and that its principal place of business under the nerve center test is accordingly in Dallastown as well.

### III.    Conclusion

For the foregoing reasons, we conclude that Trans/Air's principal place of business for purposes of 28 U.S.C. § 1332 is Dallastown, Pennsylvania. Trans/Air is therefore a citizen of Pennsylvania for purposes of the diversity statute. Because defendant Charles Merson is also a citizen of Pennsylvania, the parties are not completely diverse and we are without subject matter jurisdiction to adjudicate this dispute. Accordingly, we are constrained to GRANT Trans/Air's motion and REMAND this action to the Circuit Court for Baltimore County. A separate order follows.

It is so ORDERED this 7th day of December, 2007.

    /s/  
    Benson Everett Legg  
    Chief Judge